## NORTHERN TEXAS TRACTION COMPANY v. FRANK MULLINS.

### Decided December 22, 1906.

**1.—Discovered Peril—Evidence.**

In a suit for personal injuries caused by having been struck by a motor car, evidence considered, and held to support a finding that defendant's motorman was negligent in not using the means at his command to stop the car after discovering the peril of plaintiff's wife.

**2.—Same—Degree of Care.**

Upon discovery of one in peril on a railroad track it is the duty of the operator to use the greatest precaution to avoid injuring him. The law, as well as the dictates of humanity, imposes upon the operator the duty of using every means then reasonably within his power, consistent with safety to himself and the passengers, to avoid injuring the person in peril; and such duty demands the prompt rejection of any speculative chance that the person in peril will get off the track in time to avoid injury.

**3.—Contradicting Witness—Immaterial Matter.**

Upon cross-examination, the plaintiff having denied making statements to

third parties before the filing of the suit, to the effect that his case against the defendant was a "close" case and recovery doubtful, testimony to contradict him as to said statements was properly excluded, because said statements were mere conclusions of the witness and concerning an immaterial matter.

**4.—Permanent Injury—Future Expenses.**

In a case where the evidence showed that plaintiff's injuries were permanent, it was not error for the court to instruct the jury that, if they found for the plaintiff, and that it would be necessary for plaintiff to expend money for medical or surgical treatment in the future, this fact might be considered, together with the other circumstances, in estimating the damages.

Appeal from the District Court of Tarrant County. Tried below before Hon. Mike E. Smith.

*Capps & Cantey* and *W. M. Short,* for appellant.—The statement of plaintiff as to his actions with reference to his case, his conversation with witnesses, and discussions as to liability, facts, and issues, and which acts, conversations, discussions and circumstances he has denied upon the witness stand, are material and relevant, and evidence to contradict him is admissible against him when he has testified concerning the same, and denied the facts. Missouri, etc., Ry. Co. v. Milam, 50 S. W. Rep., 417.

The person injured being guilty of negligence, the motorman in control of the car rested under no duty to discover her presence on the track or to discover her situation of peril, but the duty only arose when the peril was discovered. Gulf, C. & S. F. Ry. Co. v. Matthews, 15 Texas Ct. Rep., 957; Internationtl & G. N. Ry. Co. v. Ploeger, 16 Texas Ct. Rep., 183; Fort Worth & D. C. Ry. Co. v. Shetter, 94 Texas, 199; Texas & P. Ry. Co. v. Breadow, 90 Texas, 26; Missouri, K. & T. Ry. Co. v. Magee, 92 Texas, 616.

If a traveler using railroad track, voluntarily chooses the dangerous way, instead of a safe one beside it, he is guilty of negligence. Gulf, C. & S. F. Ry. Co. v. Matthews, 15 Texas Ct. Rep., 957; Lewis v. Galveston, H. & S. A. Ry. Co., 73 Texas, 507; Atchison, T. & S. F. Ry. Co. v. Schwendt, 72 Pac. Rep., 573.

If any recovery is to be had for medical services, evidence should have shown the amount. Houston E. & W. T. Ry. Co. v. Richards, 49 S. W. Rep., 688; Missouri, etc., Ry. Co. v. Bellew, 54 S. W. Rep., 1081; Missouri, K. & T. Ry. Co. v. Flood, 5 Texas Ct. Rep., 922; Ft. Worth & D. C. Ry. Co. v. Morrison, 93 Texas, 527.

It is error for the court to charge the jury to consider in estimating plaintiff's damages, the loss of the services of the wife where there was no evidence of the value of such services. Houston, etc., Ry. Co. v. Artusey, 31 S. W. Rep., 319; Fergus v. Dodson, 33 S. W. Rep., 273; Fordyce v. Chancy, 21 S. W. Rep., 181; Fordyce v. Beecher, 21 S. W. Rep., 179.

*Ben M. Terrell* and *R. L. Carlock,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee's wife, Mrs. Mattie Mullins, was struck and injured by one of appellant's interurban cars on the 6th day of March, 1904. She, accompanied by her three small children,

aged ten, eight and four years respectively, together with Mrs. Lillie Barton, Mrs. Mullins' sister, Mrs. Annie Deufel and a little girl, were all strolling in a westerly direction on and along appellant's track near the eastern limits of the city of Fort Worth. While so walking and about the time, or soon after, the persons mentioned had entered upon a trestle or unfloored bridge, about twenty feet high and seventy feet long, spanning a ravine, one of appellant's heavy interurban cars swept around a curve some seven hundred feet east of the trestle. The motorman gave a warning whistle, Mrs. Mullins and others made haste to get across the bridge and off the track and all succeeded in doing so save Mrs. Mullins. She had been delayed a moment in extricating one of her little children who had fallen, and had just stepped off the last tie of the bridge and over the rail, and had thrown her little boy forward out of the way, when the rapidly moving car struck her, knocking her some twenty-five or thirty feet, and seriously injured her. The court in his charge eliminated all issues of contributory negligence on the part of Mrs. Mullins in walking on appellant's railway track at the time and place and under the circumstances stated, by submitting the case on the issue of discovered peril alone. The jury found in appellee's favor and assessed his damages in the sum of thirty-five hundred dollars and judgment was entered accordingly.

The principal questions presented by the assignments of error are founded, we think, on the contention that the evidence is insufficient to sustain the verdict and judgment, and we will hence first dispose of that contention. If the motorman's testimony is to be believed, he did not discover Mrs. Mullins' perilous position on the bridge until within about four hundred feet therefrom, whereupon he instantly used all means in his power to avert the injury, but was unable to do so. He testified that he was acquainted with the track and bridge in question, but that from the point of earliest observation the bridge was not easily distinguishable; that his car was an extra, running about sixty or sixty-five miles an hour; that as he rounded the curve he saw three women and some children in the center of the track and whistled for them, and that they broke and run; that as soon as he could locate where they were and saw they were getting on the bridge, he remarked to himself, "it is all off," and that he then "slammed" his lever (air lever) around, threw the car into emergency, which locked every wheel on the car; that as soon as he discovered that his wheels were locked and were slipping on the rails, he released his air and pulled his reverse lever; that his appliances were all in good order. He further testified that a car going at the rate of speed he was going could not be stopped in less than eight hundred feet, and in this he was corroborated by other testimony in behalf of appellant. Appellee's testimony, however, tended to contrary conclusions. It was shown by actual measurement that from the point of the curve at which persons upon the bridge could be plainly seen it was six hundred and forty-four feet to the east end of the trestle. Mrs. Barton testified to having looked back towards the approaching car one or more times after it whistled, and that the motorman was facing them but doing nothing but standing still. She says: "He made no effort whatever to stop the car prior to the accident. He made no effort to check the speed of the car prior to the time of the accident and did not

check the speed before striking Mrs. Mullins. There was no air applied or any brakes applied on said car at the time it struck Mrs. Mullins. or at any time before it struck her. The reason I say this is that if there had been any air applied I would have heard the noise of the same, for the application of either would have caused a noise which I could and would have heard, and the speed of the car would have been checked by the application of either air or brakes. . . . I base my statement that the motorman did not check the speed of the car or make any effort to check the speed of the same before it struck Mrs. Mullins, upon the fact that the speed of the train was not less from the time when I first saw the car until the time it struck Mrs. Mullins; the motorman did not apply any brakes of any kind, and from the further fact that from the time I first saw the motorman to the time Mrs. Mullins was struck, he was standing still and did not make any effort to stop the car, and from the further fact that the car went a considerable distance up the grade after it had struck Mrs. Mullins, and upon the further fact that the motorman told me that he had not tried to stop the car, thinking we would get off. It is not true that I became badly frightened." Mrs. Mullins testified that after she had been struck and upon the return of the motorman to where she was lying, in answer to her query why he had not stopped the car, he replied, "I thought you would get off." Tom Kellam, who was some two hundred feet west of the bridge testified that "at the time the car struck the woman there was not any effort made to slacken the speed that I could see, not a bit in the world. After that the motorman shut off his electricity, began to stop his car then. . . . Heard motorman say, 'thought you would have time to get across.'" There was other testimony to the effect that after striking Mrs. Mullins the car ran about three hundred feet up a four percent grade before it was brought to a stop; that an interurban car running at fifty miles an hour could be stopped within five hundred feet; that a car running at from five to ten miles an hour could be stopped easily in thirty feet.

After the discovery of Mrs. Mullins' perilous position, it was the duty of the motorman to use "the greatest precaution to avoid injuring" her. (Sanches v. San Antonio & A. P. Ry., 88 Texas, 117.) In other words, as supported by numerous authorities, in such case the law, as well as the dictates of humanity, imposed upon him the duty of using every means then reasonably within his power, consistent with safety to himself and others on the car, to avoid running Mrs. Mullins down. (Texas & P. Ry. Co. v. Breadow, 90 Texas, 26; Texas & P. Ry. Co. v. Staggs, 90 Texas, 458; Houston & T. C. Ry. Co. v. Wallace, 21 Texas Civ. App., 394, in which writ of error was refused.) Such duty certainly demanded of the motorman prompt rejection of any merely speculative chance that Mrs. Mullins would "get off" the track in time. It is to be scarcely doubted that appellee's testimony supports the inference that the motorman discovered Mrs. Mullins' dangerous position upon the trestle and that she might not be able to escape therefrom in time to avoid injury while the motorman was not less than three or four hundred feet east of her, and that had he then used all the means at his command the speed of the car would at least have been so retarded and decreased as to have enabled Mrs. Mullins to have escaped. She testified that a single additional step would have taken her beyond the reach of the car. A single

instant of time was therefore all important to her, and we think that the testimony as a whole supports the conclusion that must be imputed to the verdict that the motorman failed to use the means at his command which, if applied in the exercise of the greatest caution, would have given the necessary moment for escape. We conclude that the evidence warrants the judgment, and all assignments dependant upon such conclusion are overruled.

The evidence referred to in the first and second assignments, insofar as it was excluded, was irrelevant and incompetent. It embodied a mere conclusion of appellee and contradicted his testimony on immaterial matters. Its introduction therefore would have tended to confuse and mislead the jury.

We do not think the court's charge subject to the criticism made of it. In paragraph two, of which complaint is made, the court instructed the jury in effect to find for appellant if they found after discovering Mrs. Mullins' perilous position, that the "motorman used ordinary care in the use of the means reasonably within his control to avoid the collision," or "if in the exercise of ordinary care he ought not, or should not reasonably have foreseen or anticipated that she would not probably leave the track in time to avoid injury." In the particulars quoted the charge seems equally as favorable to appellant as it had any right to demand, or even as special charge number 1, to the refusal of which complaint is also made.

The court in its fourth paragraph did not instruct the jury, as appellant seems to assume, that in estimating the damages, necessary medical expenses of the future should be allowed. The instruction was merely to the effect that if the jury found for plaintiff, and that it would be necessary to expend money for medical or surgical treatment in the future, this fact might be considered together with the other circumstances in estimating the damages. It can not be successfully contended that there is no evidence of permanent injury to Mrs. Mullins, and we can see no sufficient reason why the jury, in allowing the reasonable compensation to which they were restricted by other parts of the charge, might not consider the fact submitted.

We fail to find any substantial variance between the first amended petition upon which the case went to trial and the testimony objected to in appellant's bill of exception number 2, but if mistaken in this, the variance was cured by the permitted amendment, which could not have occasioned surprise and which hence was clearly within the court's discretion to allow. It seems manifest to us from appellant's statement under the thirteenth assignment that that assignment is not well taken, and the contention under the fifteenth assignment to the effect that the value of the wife's services could not be considered as an element of damages in the absence of specific proof thereof, is likewise without merit. See Gainesville, H. & W. Ry. Co. v. Lacy, 86 Texas, 249.

Finding no error in the proceedings below, the judgment is affirmed.

Justice Stephens concurs in the result but not in all that is said in the opinion.

*Affirmed.*

Writ of error refused.